IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHN HARGROVE, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) Civil Action No.:  5:25-cv-00064-DAE (HJB) |
| v. | ) |
| | ) |
| REACH, PLC; MGN, LTD. | ) |
| D/B/A MIRROR GROUP | ) |
| NEWSPAPERS, LTD.; EXPRESS | ) |
| NEWSPAPERS; AND | ) |
| REACH US OP CO, LTD. | ) |
| | ) |
| DEFENDANTS. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FOR IMPROPER VENUE, AND UNDER THE DOCTRINE OF *FORUM NON COVENIENS***

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants, REACH, PLC; MGN, LTD. D/B/A MIRROR GROUP

NEWSPAPERS, LTD.[1]; EXPRESS NEWSPAPERS; AND REACH USOP CO., LTD.

(collectively "Defendants"), who respectfully submit this memorandum of law to support their

motion to dismiss the Second Amended Complaint [Doc. 38] ("SAC") filed by Plaintiff John

Hargrove ("Plaintiff" or "Hargrove") pursuant to Federal Rules of Civil Procedure 12(b)(2), and

in the alternative Rule 12(b)(3) or under the doctrine of *forum non conveniens*, as follows:

---

[1] Mirror Group Newspapers, Ltd. is not a doing-business-as name for MGN Ltd.  Schroeder Decl. n.1.  Rather, Mirror Group Newspapers, Ltd. is a separate entity which has no involvement with the publications at issue in the SAC--the *Mirror* and the *Daily Star*.  *Id.*  In addition, Mirror Group Newspapers, Ltd. is dormant and is in liquidation.  *Id.*

## I.    PRELIMINARY STATEMENT

1.    Like Plaintiff's First Amended Complaint ("FAC"), which the Court properly dismissed, Plaintiff's SAC should be dismissed because this case has no connection to Texas whatsoever and should have been filed (if at all) in the United Kingdom.  In this regard, the alleged infringement of Plaintiff's copyrighted photographs occurred on two U.K. websites – www.mirror.co.uk and www.dailystar.co.uk – which are published by U.K. companies (Defendant MGN Ltd. and Defendant Express Newspapers, respectively), which are not subject to general or personal jurisdiction in Texas.   Defendant Reach, PLC, yet another U.K. company, is not the publisher of either of the two publications identified in the SAC, and in any event is not subject to general or specific personal jurisdiction in Texas.  Lastly, Defendant Reach US OpCo., Ltd. is a Delaware company that is not subject to general or personal jurisdiction in Texas, and has no involvement with the two U.K. websites identified in the SAC.

2.    Plaintiff's SAC does nothing to alter the foregoing undisputed, case-dispositive facts. Instead, Plaintiff attempts to re-plead the "alter ego" theory of personal jurisdiction that the Court already correctly rejected, but Plaintiff falls woefully short of pleading facts showing fraud or other abuse of the corporate form.  Plaintiff cites (but does not attach) various company documents purporting to show that Reach, PLC has a desire to reach American audiences through certain publications that target a U.S. audience.  Even if *arguendo* Plaintiff's allegations are taken as true, they come nowhere close to showing "fraud" as to any corporate formalities.  It is undisputed that Defendant Reach, PLC has corporate affiliates – Defendants MGN Ltd. and Express Newspapers – who publish U.S. publications (such as *Mirror US*) that are not at issue in this case, and that those publications target a U.S. audience.  However, Plaintiff has not pleaded any facts showing that Reach, PLC has fraudulently disregarded the corporate form as to those affiliates, but even if he did, such allegations would be irrelevant because those U.S. websites

never published Hargrove's copyrighted photographs and are not at issue in this case.  Instead, the only two websites at issue in this case were published by U.K. entities (MGN Limited and Express Newspapers), which plainly target a U.K. (not a U.S.) audience.  The fact that two officers or directors of Reach, PLC are also officers of MGN Limited and Express Newspapers does not show fraud or other abuse of the corporate form.  Moreover, as attested in the attached declaration of Nicola Schroeder, all editorial decision-making by MGN Limited and Express Newspapers is separate from Reach, PLC, and the companies keep separate financial records. Accordingly, the corporate separateness of Reach, PLC, MGN Limited, and Express Newspapers is observed in practice and Plaintiff has come nowhere close to sufficiently pleading fraud, as required for an "alter ego" theory of jurisdiction.

3.      Second, Plaintiff claims that Defendants are subject to personal jurisdiction in Texas because the subject websites, www.mirror.co.uk and www.dailystar.co.uk, display third-party programmatic advertising with ads for Texas-based businesses.  Plaintiff's argument fails as a matter of law because the display of third-party, programmatic advertising on a defendant's website is not sufficient by itself to subject a foreign defendant to jurisdiction in the forum state. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320–22 (5th Cir. 2021) (third-party ads on HuffPost.com did not subject defendant to personal jurisdiction in Texas because "'the *defendant* himself' must create the contacts that sustain the forum state's jurisdiction") (quoting *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019)).  As detailed in the attached Schroeder Declaration, MGN Ltd. and Express Newspapers have no involvement in the selection of which advertisers display ads on www.mirror.co.uk and www.dailystar.co.uk in connection with the programmatic advertising process, nor do MGN Ltd. and Express

Newspapers do anything to seek out or encourage Texas-based advertisers to advertise on www.mirror.co.uk or www.dailystar.co.uk.  Schroeder Decl. ¶ 16.

4.      Alternatively, the Court should dismiss this lawsuit for improper venue or under the doctrine of *forum non conveniens* because United Kingdom copyright law more properly governs the underlying dispute, and the pertinent evidence and witness(es) are located in the United Kingdom.  The balance of the private and public interests also weighs in favor of dismissal under this doctrine.

5.      For the reasons discussed herein, Defendants respectfully request that the Court grant their Motion to Dismiss with prejudice.

## II.      FACTUAL BACKGROUND AND JURISDICTIONAL ALLEGATIONS

6.      This civil action arises from Plaintiff's allegation of Defendants' unauthorized use of copyrighted images purportedly owned by Plaintiff.  Plaintiff filed his original complaint on January 16, 2025, asserting claims for Joint Venture, Joint Enterprise, and Infringement of a Federally Registered Copyright 17 U.S.C.A. § 501.  (Doc. 1).  The original complaint named five defendants—Reach, PLC; The Daily Mirror; The Mirror US; Daily Star; and MGN, Ltd. d/b/a Mirror Group Newspapers, Ltd.  On May 30, 2025, Plaintiff filed the FAC (Doc. 24), asserting the same claims as in his original complaint, against the same five defendants, but also adding two additional defendants—Express Newspapers and Reach US Op. Co., Ltd.  On December 1, 2025, the Court dismissed Plaintiff's FAC with prejudice as to Defendants The Daily Mirror, The Mirror US, and Daily Star and without prejudice as to Defendants Reach, PLC, MGN, Ltd. d/b/a Mirror Group Newspapers, Ltd., Express Newspapers and Reach US OpCo., Ltd., for lack of personal jurisdiction.  Plaintiff's SAC fails for similar reasons as the FAC and must be dismissed with prejudice.

## III.    ARGUMENTS AND AUTHORITIES

### A.    THE COURT SHOULD DISMISS THE SAC FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS

7.    Plaintiff bears the burden of establishing that personal jurisdiction exists over Defendants. *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) ("Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."); *Monkston Ins. Co. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ("The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper."). A district court may only exercise personal jurisdiction over an out-of-state defendant if the long-arm statute of the state in which the court sits allows the exercise of jurisdiction, and then only if the exercise of personal jurisdiction is constitutional. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). In Texas, these two considerations collapse into one because the Texas long-arm statute authorizes Texas courts to exercise personal jurisdiction to the full extent allowed by the Fourteenth Amendment of the United States Constitution. *See Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1495-96 (5th Cir. 1993) (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.*). Thus, this Court need only consider whether "the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

8.    The relevant standard for due process is that: "[t]he plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction of that defendant does not offend traditional notions of 'fair play and substantial justice.'" *Id.*

9.      Under the minimum contacts analysis, a plaintiff must show that a defendant has purposefully availed itself of the privileges of conducting activities within the forum, thus invoking the benefits and protections of its laws.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  The defendant's contact with the forum state must be so purposeful that the defendant reasonably anticipates being haled into court there.  *Id.*  The requirement that the contacts be purposeful precludes a party from compelling a non-resident defendant to defend itself in a jurisdiction where its only connections are "random," "fortuitous," or "attenuated."  *See id*. at 475.  Indeed, one of the principal goals of a personal jurisdictional inquiry is the protection of defendants, and therefore, "the central focus must be on the defendant's *intentional* actions and expectations." *USAA Cas. Ins. Co. v. Dydek*, SA 05 CA 333 OG, 2006 WL 2329408, at *3 (W.D. Tex. June 14, 2006) (emphasis added) (citation omitted).

10.     Minimum contacts of a non-resident defendant with the forum may support either "general" or "specific" jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

11.     "Specific jurisdiction" is limited and is based on a defendant's contacts with the forum state that are related to the controversy.  *See Southmark Corp. v. Life Investors, Inc*., 851 F.2d 763, 772-73 (5th Cir. 1998).  Alternatively, when the cause of action does not arise from the defendant's purposeful contact with the forum state, general jurisdiction may be found, so long as the defendant's contacts with the forum state are "continuous and systematic."  *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413-19 (1984).  A plaintiff's conclusory allegations (i.e., allegations that are alleged "on information and belief") are not accepted as true, even if uncontroverted.  *Panda Brandywine Corp.*, 253 F.3d at 869.  Even non-conclusory allegations are

not taken as true if they are contradicted by the defendant's declaration. *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982).

12.     As set forth herein, none of the Defendants have contacts with Texas that are sufficiently continuous or systematic to satisfy required due process, nor have any of the Defendants purposefully directed conduct at the state of Texas.

**1.     The Defendants Are Not Subject to General Personal Jurisdiction in Texas.**

13.      Plaintiff does not attempt to plead that any of the Defendants are subject to general personal jurisdiction in Texas, and it is obvious from the face of the SAC that none of the Defendants is "at home" in Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) ("the inquiry... is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'").   The two Defendants who publish the U.K. websites at issue – Defendant MGN Ltd. and Defendant Express Newspapers – are incorporated in the United Kingdom and have their principal places of business there. Schroeder Decl. ¶¶ 6-7, 11-12.  Likewise, Defendant Reach, PLC is incorporated in the United Kingdom and has its principal place of business there.  *Id.* ¶¶ 3-4.  Lastly, Defendant Reach US Op. Co., Ltd. is a Delaware company that has its principal place of business in New York.  *Id.* ¶ 17.  As detailed in the attached Schroeder Declaration, none of Defendants own or lease property in Texas, are registered with the Texas Secretary of State, or have an address or bank accounts in Texas.  *Id.* ¶¶ 8, 13, 17.  Accordingly, the Defendants plainly have insufficient contacts with Texas to render them "at home" in this State, and thus they are not subject to general personal jurisdiction in Texas.

**2.     Defendants Are Not Subject to Specific Personal Jurisdiction in Texas.**

14.     To properly establish specific personal jurisdiction, Plaintiff has the burden of making a *prima facie* showing that (1) "the defendant ... purposely directed its activities there"; and (2) "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts…" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *Luv n' Care, Ltd.*, 438 F.3d at 469.  If plaintiff satisfies its burden of establishing the first two prongs, it is defendant's burden to demonstrate whether "the exercise of personal jurisdiction is fair and reasonable." *Seiferth*, 472 F.3d at 271.

a.     **Plaintiff Fails to Sufficiently Plead an Alter Ego Theory of Personal Jurisdiction.**

15.     Although his pleading is muddled, it appears Plaintiff is attempting to plead a theory of jurisdiction pursuant to which all of the named Defendants are deemed to have "purposely directed activities" at Texas by virtue of the fact that one of those named Defendants (Reach, PLC) has affiliates – Defendants MGN Ltd. and Express Newspapers – who publish U.S. websites that did *not* publish Hargrove's photographs and are not at issue in this dispute.  Aside from being substantively irrelevant to the subject matter of this case, Plaintiff's allegations come nowhere close to pleading fraud or other abuse of the corporate form as required to support an "alter ego" theory of jurisdiction.

16.     It is presumed that a subsidiary, even a wholly owned subsidiary, is independent of its parent company for jurisdictional purposes.  *Adm'rs of Tulane Educ. Fund v. Ipsen*, S.A., 450 Fed. App'x. 326, 329 (5th Cir. 2011); *see Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("Generally ... the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.").  This presumption can be overcome by clear evidence.  *Ipsen, S.A.*, 450 Fed. App'x. at 329.  Such clear evidence "requires an additional or plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate

family." *Id.* (citation modified).  A finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries may be justified if the parent "exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Hargrave*, 710 F.2d at 1159 (citing 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4–273 (2d ed. 1982)).

17.     The Fifth Circuit has set out factors for consideration of whether a parent is amenable to personal jurisdiction based on the actions of a subsidiary: 1) whether the parent owns all or a significant portion of the subsidiary's stock; 2) whether the two corporations have separate headquarters; 3) whether they have common officers and directors; 4) whether they observe corporate formalities; 5) whether they maintain separate accounting systems and bank accounts; 6) whether the assets of the corporations are commingled; 7) whether the parent exercises complete authority over general policy; and 8) whether the subsidiary exercises complete authority over its daily operations.  *See Hargrave,* 710 F.2d at 1160.  Under both federal common law and Delaware law, "[f]raud or something like it is required." *Mobil Oil Corp.v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (citing cases using both federal and Delaware common law); *see also Steve Sell v. Universal Surveillance Sys.*, No. 1:16-cv-660-RP2017 WL 3712188 at *2 (W.D. Tex. July 6, 2017).  Thus, the guiding question of the alter ego analysis is whether the corporate form was abused.

18.     Here, Plaintiff makes the conclusory allegation that "Reach PLC exerts unified corporate control over all Defendants and functions as a single business enterprise," such that the "corporate separateness among them was not observed in practice as to the infringing activities" and thus "Reach PLC is liable for the infringing acts of its subsidiaries under theories of alter ego, agency, vicarious liability and contributory copyright infringement."  Doc. 38 at 7-8, ¶¶ 23, 26.

19.    In an effort to support these allegations, Plaintiff cites (but does not attach) various company documents purporting to show that Reach, PLC has a desire to reach American audiences through U.S. publications.  Plaintiff's allegations fail because even if *arguendo* they are taken as true, they come nowhere close to showing "fraud" as to any corporate formalities.  For example, Plaintiff alleges that "[a]ccording to Reach PLC's 2022 and 2024 Annual Reports, … Reach PLC is the parent company of a consolidated group of publishing entities, including MGN Ltd. and Express Newspapers" and a Reach, PLC 2022 Annual Report purportedly states "We're also launching in the US, a new market where we can get to know customers …" (Doc. 38 at 1, 4, ¶¶ 14).  Plaintiff further pleads that "*Mirror US*, launched by Reach in July 2023, is part of a strategy to grow international audiences" and that Reach US OpCo., Ltd. "is the publishing entity responsible for U.S.-oriented content[2], including *Mirror US*, and functions as the digital and editorial arm of Reach PLC's U.S. operations."  Doc. 38 at 4, ¶ 13.

20.    Far from showing fraud, the foregoing allegations show nothing more than that Reach, PLC, as the parent company for the Reach group of companies (which currently includes approximately 212 entities worldwide, with 120 media brands), desired to launch U.S.-focused publications through its affiliated companies.  Plaintiff cites the fact that Defendant Reach US OpCo., Ltd. is a Delaware-based company, with operations in New York, but those facts do nothing to show fraud.  It is undisputed that Reach US OpCo., Ltd. is in fact responsible for content creation for a completely separate U.S. publication that never displayed Hargrove's photographs—*The Mirror US*—and Reach US OpCo., Ltd. is in fact a subsidiary of Reach, PLC.  However, those basic facts about the corporate relatedness between Reach, PLC and Reach US OpCo., Ltd.

---

[2] Plaintiff's allegation as to Reach OpCo. Ltd. is incorrect because Reach OpCo. Ltd. is not a publisher.

obviously do not show fraud. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593-94 (5th Cir. 1999) (finding no grounds for applying the alter ego doctrine where there exists a "typical corporate relationship between a parent and subsidiary" because the "alter ego doctrine is an equitable remedy which prevents a company from avoiding liability by abusing the corporate form.").

21.     Moreover, the corporate separateness of Defendants is not disregarded in practice, as alleged by Plaintiff.  Quite the opposite, all national publications under the Reach, PLC umbrella have their own editorial teams and different Editors-in-Chief.  Schroeder Decl. ¶ 20.  Every national brand (including the UK-focused *Mirror* and *Daily Star* publications at issue in this case) has a different Editor-in-Chief.  *Id.*  Each Editor-in-Chief is responsible for what his or her brand publishes. *Id.*  Each individual publisher (including MGN Ltd. and Express Newspapers) exercises ultimate editorial discretion.  *Id.*  Although Reach, PLC provides central policy and guidelines for all companies in the Reach network, the day-to-day operations of the respective publications, including *Mirror* and *Daily Star*, are handled independently by those entities (such as MGN Limited and Express Newspapers). *Id.* ¶ 21.

22.     Plaintiff    alleges    that    the    Reach    2024    Annual    Report    states    that "[Reach PLC's] Annual Report contains consolidated financial statements [for all Defendants] …" Doc. 38 at 3, ¶ 10.  Even if *arguendo* Plaintiff's allegation is taken as true, it is not surprising that an annual report summarizing the performance of a multinational corporation consisting of approximately 212 entities would not have an entity-by-entity breakdown of the financial performance of each individual entity.  The absence of such granular, entity-by-entity details in an annual report obviously does not show the actual commingling of assets and, as attested by Ms. Schoeder, each entity in the Reach group of companies keeps separate financial records.  Schroeder

Decl. ¶ 21; *see First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 754 (5th Cir. 2012), *as revised* (Jan. 17, 2013) (finding evidence of independent financial statements weighed against application of alter ego theory in personal jurisdiction analysis); *see also Dur carbon Latinamerica, LLC v. SIMEC USA Corp.*, No. 7:24-CV-331, 2025 WL 3496783, at *7 (S.D. Tex. Dec. 5, 2025) (evidence of consolidated financial statements insufficient to support application of alter ego theory in personal jurisdiction analysis).

23.    Similarly, the mere fact that Reach, PLC, MGN Limited, and Express Newspapers share two directors or officers does not by itself support an alter ego theory of jurisdiction, particularly since neither officer/director has any involvement in the day-to-day operations of the two UK publications at issue.  *See* Doc. 38 at 8, ¶ 24; Schroeder Decl. ¶ 22; *see Bauer-Pileco, Inc. v. Scheffler Nw., Inc.*, No. CV H-16-2056, 2017 WL 1231077, at *6 (S.D. Tex. Apr. 4, 2017) ("Common officers, directors, … do not create an alter-ego relationship between two companies."); *Equal Emp. Opportunity Comm'n v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2012 WL 13040407, at *3 (S.D. Tex. Oct. 23, 2012) (evidence of common ownership, officers, directors, and board members insufficient to establish alter ego theory for personal jurisdiction absent some additional evidence that parent company controlled day-to-day operations of subsidiary).  Likewise, the allegation that a non-party identified as "Reach Solutions"[3] offers "display advertising packages …. Across our network of regional and national news brands" does not reflect a disregard of the corporate form as between Reach, PLC and Reach Solutions, or any of the named Defendants.  Rather, it is merely an allegation that one corporate subsidiary offers services to others in the corporate family.

---

[3] "Reach Solutions" is not a company itself but is a brand operated by a subsidiary of Reach, PLC.

24.     Simply put, there is nothing unusual or "fraudulent" about a foreign company establishing a network of affiliates to conduct business in the United States, and in fact that practice is commonplace in the corporate world.  Nor is it fraudulent for a foreign company to set an overall, strategic vision for its group of companies.  If those facts were sufficient to support alter ego jurisdiction, virtually every foreign parent company of a multinational organization would be subjected to jurisdiction in the U.S. merely by virtue of being the parent of U.S. subsidiaries.   *See Hargrave,* 710 F.2d at 1159 ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there.").  Accordingly, Plaintiff has not sufficiently pleaded an "alter ego" theory of personal jurisdiction.

> **b.**    **Plaintiff's Allegations Concerning Third-Party Advertising by Texas-Based Advertisers on www.mirror.co.uk and www.dailystar.co.uk Do Not Subject Defendants to Personal Jurisdiction in Texas.**

25.     Plaintiff claims that Defendants are subject to personal jurisdiction in Texas because the subject websites, www.mirror.co.uk and www.dailystar.co.uk, display third-party programmatic advertising with ads for Texas-based businesses.  Doc. 38 at 14, ¶¶ 48-49.  Plaintiff's argument fails as a matter of law because the display of third-party, programmatic advertising on a defendant's website is not sufficient by itself to subject a foreign defendant to jurisdiction in the forum state.   *See TheHuffingtonPost.com, Inc.*, 21 F.4th at 320–22 (third-party ads on HuffPost.com did not subject defendant to personal jurisdiction in Texas because "'the *defendant* himself' must create the contacts that sustain the forum state's jurisdiction") (quoting *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019)).  The Fifth Circuit examined closely similar facts and arguments in *TheHuffingtonPost.com[4]* and held that third-

---

[4] In *Huffingtonpost.com*, as in the instant case, the plaintiff "alleged two ad-based ties with Texas. *First*, HuffPost displayed ads from Texas-based advertisers. *Second*, it used visitors' location data to tailor advertising to them. So when the site detects that a user is visiting the site

party advertising from Texas-based advertisers on the foreign defendant's website did not provide a basis for personal jurisdiction over the defendant in Texas.  In reaching that decision, the court emphasized that, to support jurisdiction, the defendant's express aiming at the forum state must arise from the defendant's alleged wrongful conduct itself:

> What matters is whether HuffPost aimed *the alleged libel* at Texas. Third-party ads on HuffPost's site reflect no such aiming. They neither caused nor relate to the harm that the story caused. They do not drive Texans to the site or even to the alleged libel. Instead, they direct Texans *away* from the site, to third-party advertisers.

*TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320–22.  Accordingly, the *Huffingtonpost.com* court held that "HuffPost need not block Texans from visiting its site, receiving relevant advertising, or buying T-shirts to escape the ability of Texas courts to hear Johnson's libel claim."  *Id.* at 323. Rather, "HuffPost may avoid the authority of Texas's courts by not purposefully directing at Texas the conduct that produced Johnson's suit."  *Id.*

26.     Applying the foregoing reasoning, the display of third-party programmatic advertising from Texas-based advertisers on www.mirror.co.uk and www.dailystar.co.uk does not subject Defendants to personal jurisdiction in Texas because the display of those advertisements is unrelated to Plaintiff's claims, namely, Defendants' alleged display of Plaintiff's copyrighted photographs on www.mirror.co.uk and www.dailystar.co.uk.  Under *Huffingtonpost.com*, what matters is whether Defendants aimed **the alleged copyright infringement** at Texas.  Here, there are no such plausible allegations, as Defendants' sites plainly target U.K. consumers, as illustrated *inter alia* by the fact that the subscription pages of both websites list the subscription

from Texas, advertisers may use that data to generate a relevant ad—such as the "Attention Texas Driver!" ads that no one clicks." *TheHuffingtonPost.com, Inc.*, 21 F.4th at 320–21.

prices in British pounds, not U.S. dollars, and note that "Vouchers [are] accepted by retailers across the UK." Schroeder Decl. ¶¶ 9, 14 & Exs. A & B.

27.     Moreover, as explained in *Huffingtonpost.com*:

> The place from which a person visits HuffPost's site is entirely beyond HuffPost's control. Johnson never says that HuffPost reached beyond the site to attract Texans to it or to the story about Johnson. He does not say, for example, that HuffPost aimed the alleged libel at Texas through geotargeted ads on Facebook or Google. Instead, he alleges only that HuffPost showed unrelated ads to those *already visiting its site.*
>
> That point matters because "the defendant *himself*" must create the contacts that sustain the forum state's jurisdiction. Because Johnson does not allege that HuffPost solicited Texan visits to the alleged libel, we cannot conclude that those visits are *HuffPost's* purposeful contacts with Texas. Instead, those visits reflect the "unilateral activity," *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228, of persons in Texas typing "huffpost.com" into their web browsers and pressing "Enter."

28.     The same conclusion is warranted here.  Plaintiff does not allege that Defendants reached beyond the websites www.mirror.co.uk and www.dailystar.co.uk to attract Texans to the news articles that allegedly displayed Plaintiff's copyrighted photographs.  Rather, Plaintiff merely alleges that www.mirror.co.uk and www.dailystar.co.uk showed unrelated ads to those *already visiting its site.  See also* Schroeder Decl. ¶ 16 ("MGN Ltd. and Express Newspapers have no involvement in the selection of which advertisers display ads on www.mirror.co.uk and www.dailystar.co.uk in connection with the programmatic advertising process, nor do MGN Ltd. and Express Newspapers do anything to seek out or encourage Texas-based advertisers to advertise on www.mirror.co.uk or www.dailystar.co.uk.").  Accordingly, Plaintiff's allegations concerning the display of third-party programmatic advertising from Texas-based advertisers on www.mirror.co.uk and www.dailystar.co.uk do not subject Defendants to personal jurisdiction in Texas.  *See also DISH Network, L.L.C. v. Elahmad*, No. 23-20180, 2024 WL 1008585, at *4 (5th Cir. Mar. 8, 2024) (plaintiff's reliance on defendant's third-party tailored advertising based on

location insufficient to establish personal jurisdiction where advertisements were unrelated to claim).

### c. The Alleged Contacts Between Defendants' Journalists and Plaintiffs in Texas Do Not Provide a Basis for Personal Jurisdiction.

29.     Lastly, Plaintiff alleges that in 2022 "a journalist, Nada Farhoud, with The Daily Mirror reached out to Plaintiff and asked permission to use any photos of him performing with killer whales …" in Texas, and "Plaintiff gave permission to use just one photograph with the proper photo credit." Doc. 38 at 11 ¶ 37.  Plaintiff made this same allegation and argument in connection with the FAC, and the Court—in analyzing it under the *Calder* effects test—rejected the allegation as insufficient to plead personal jurisdiction over Defendants in Texas.  *See* ECF 37 at 19 (although "it is a reasonable inference that Defendant MGN Ltd. knew where Plaintiff lived and would be harmed there by continuing to use the copyrighted photos without permission… the Court is less persuaded that Defendant MGN Ltd. expressly directed the articles at the forum state …. [and] the articles do not state that SeaWorld is in Texas or otherwise mention Texas").  Plaintiff attempts to plead something new in Paragraph 15 of the SAC by alleging that "Jane Fryer (*Mirror*) intentionally contacted Plaintiff in Texas …"  ECF 38 at 5, ¶ 15.  However, Defendants have searched their HR system and have no record of "Jane Fryer" ever being employed by Defendants. Schroeder Decl. ¶ 23.  There is a "Jane Fryer" who evidently works as a reporter for a competing publication (*The Daily Mail*), which is published by a third-party that is unaffiliated with Defendants.  *Id.*  Thus, as with his allegations in the FAC, Plaintiff's allegations concerning Defendants' journalists contacting Plaintiff in Texas do not provide a basis for personal jurisdiction over the Defendants in Texas.

30.     Accordingly, Plaintiff has not satisfied his burden to make a *prima facie* showing that this Court can exercise specific personal jurisdiction over any of the Defendants.

### B.    THIS COURT SHOULD DISMISS THE COMPLAINT FOR IMPROPER VENUE

31.    In the alternative, the SAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1400(a) for improper venue. Rule 12(b)(3) allows a Court to dismiss an action for improper venue, and whether venue is "'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws...." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). The federal venue law governing copyright claims is 28 U.S.C. § 1400(a). *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966).

32.    Under § 1400(a), venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).  Although the Fifth Circuit has not determined the meaning of the "may be found" language of 28 U.S.C. 1400(a), there is widespread agreement that a defendant may be found in a district where personal jurisdiction over a defendant can be maintained.  *See Tayama v. Riom Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *2 (N.D. Tex. Feb. 21, 2012) (citing *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co. Inc.*, 8 F.3d 441 (7th Cir. 1993); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets this provision to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."); *Palmer v. Braun*, 376 F.3d 1254, 1259 (8th Cir. 2004); *see also Time, Inc.*, 366 F.2d at 696; *Gen. Design Sign Co., Inc. v. Am. Gen. Design.*, 2003 WL 251931, at *2 (N.D. Tex. 2003).

33.    As detailed herein, none of the Defendants is subject to personal jurisdiction in Texas. Thus, the Court should dismiss this case for improper venue under Fed. R. Civ. P. 12(b)(3).

### C.    THIS COURT SHOULD DISMISS THE COMPLAINT FOR *FORUM NON CONVENIENS*

- 17 -

34.     As another alternative, the Court should dismiss the SAC pursuant to the doctrine of *forum non conveniens* because the United Kingdom is an alternative forum that is available and adequate, and because the balance of private and public interests weighs in favor of dismissal.  *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) ("The *forum non conveniens* determination is committed to the sound discretion of the trial court."); *see also Saqui v. Pride Cent. Am. LLC*, 595 F.3d 206, 211-12 (5th Cir. 2010).

35.     A plaintiff's choice of forum is not dispositive.  *DTEX*, 508 F.3d at 795 (citing *Piper Aircraft*, 454 U.S. at 255-56).  As demonstrated herein, the balance of the factors strongly favors dismissal. *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 753 (7th Cir. 2008) (Posner, C.J.) ("[T]he presumption is fine, but it is not to be treated, as the plaintiff would have us do, as a nigh-insurmountable obstacle to dismissal"); *see also Piper Aircraft*, 454 U.S. at 255 n.23.

**1.     The United Kingdom is an Adequate Alternative Forum.**

36.     "An alternative forum exists when it is both available and adequate." *Saqui*, 595 F.3d at 211 (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir.1987)). Here, the United Kingdom is an available forum for Plaintiff's claims because Defendants would be amenable to process in the United Kingdom.  *See In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) ("[S]ubmission to the jurisdiction of an alternative forum renders that forum available for the purposes of [FNC] analysis.") (internal citation omitted).

37.     The United Kingdom is also an adequate forum.  For purposes of *forum non conveniens*, an alternative forum is adequate so long as the remedy available to address the plaintiff's injury is "not so clearly inadequate or unsatisfactory that it is no remedy at all."  *Piper Aircraft*, 454 U.S. at 254. "'Adequacy' does not require that the alternative forum provide the same relief as an

American court." *DTEX*, 508 F.3d at 796. Instead, in considering a motion based on *forum non conveniens*, "substantiative law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Id*.

38.     Here, a claim for copyright infringement is cognizable under United Kingdom copyright law, which would govern whether the alleged display of Plaintiff's copyrighted photographs on www.mirror.co.uk and www.dailystar.co.uk was unlawful. As such, the United Kingdom is an adequate alternative forum to hear this dispute.

### 2.     The Balance of Private and Public Interest Factors Weigh in Favor of Dismissal.

39.     As discussed above, the publishers of the U.K. websites identified in the SAC—MGN, Ltd. and Express Newspapers—are incorporated in the U.K. and their management and operations are located there. In addition, the two websites at issue target U.K. residents.

40.     Since evidence and witness(es) under Plaintiff's theory of copyright infringement are located at the United Kingdom, the relevant private interest factors— (1) the relative ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing any relevant premises; and (5) all other practical factors that make trial expeditious and inexpensive—all weigh in favor of dismissing the SAC. *See Saqui*, 595 F.3d at 213 (citation omitted).

41.     If the private interest factors favor dismissal, a court need not consider the public interest factors. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993). Nevertheless, balancing the public interest factors also weighs in favor of dismissal because the underlying alleged acts of infringement occurred in the United Kingdom, Defendants reside the United Kingdom, and the applicable law is United Kingdom copyright law--none of which concern or

relate to this District. *Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.*, 933 F. Supp. 1301, 1313 (S.D. Tex. 1996) (citing *Pain v. United Techs. Corp.*, 637 F.2d 775, 793 n. 101 (D.C. Cir. 1980) ("The central question a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.")).

42.     In addition, if this case were adjudicated in this Court, a jury would be burdened with determining a dispute arising in the United Kingdom and with no relation to this District. Accordingly, "it is not in the public interest to burden this docket and the litigants with a case that has only a limited connection to the local community." *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F. Supp. 2d 437, 450 (S.D. Tex. 2008). "United States citizens should not be forced to wait in the corridors of our courthouses while foreign causes of action are tried." *Seguros*, 933 F. Supp. at 1314.

43.     Upon balancing these factors, this case should be dismissed in favor of the more convenient courts in the United Kingdom.

## IV.     CONCLUSION

44.     For all of the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss with prejudice all claims asserted by Plaintiff in the SAC.

SIGNATURE PAGE FOLLOWS

Respectfully submitted,


*/Ross Q. Panko/*
Adam Bowser (VA Bar No. 1644196)
Ross Q. Panko (DC Bar No. 489282 – admitted
*pro hac vice*)
ArentFox Schiff, LLP
1717 K Street, NW
Washington, D.C. 20006
(202) 857-6000 phone
(202) 857-6395 fax
adam.bowser@afslaw.com
ross.panko@afslaw.com

***Attorneys for all Defendants***

- 22 -

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 27, 2026, I served the foregoing by email on counsel for

Plaintiff as listed below via ECF.

Dennis C. Postiglione
The Casas Law Firm, P.C.
607 E. Blanco Road
Ste # 1724
Boerne, TX 78006
Email: dennis@talentrights.law

Joseph N. Casas
11844 Bandera Road #509
Helotes, TX 78023
Email: joseph@talentrights.law

/s/Ross Q. Panko
Ross Q. Panko